UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-20391-CR-ALTONAGA/REID
18 U.S.C. § 1343
18 U.S.C. § 982(a)(2)(A)

UNITED STATES OF AMERICA

v.

GERMINE CHARITE,

Defendant.
________________________________/

FILED BY JAO D.C.
Sep 15, 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

# INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### *The Small Business Administration*

1. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small business and by assisting in the economic recovery of communities after disasters.

2. The SBA enabled and provided for loans through banks, credit unions, and other lenders. Those loans had government-backed guarantees.

### *The Paycheck Protection Program*

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide financial assistance to the millions

of business owners who were suffering from the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small business for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

4. In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to provide, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the applicant business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

5. A PPP loan application was processed by a participating lender or the participating lender's delegee. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

6. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on

these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

***The Defendant***

7. **GERMINE CHARITE** was a resident of Broward County, Florida and was the CEO and registered agent of DC Super Xpress Corporation beginning on or about May 28, 2020.

8. DC Super Xpress Corporation was a Florida corporation with its listed principal address in Miramar, Florida.

***Relevant Banks and Processors***

9. Bank 1 was a financial institution headquartered in Fort Lee, New Jersey, which was an approved SBA lender of PPP loans.

10. Loan Processor 1 was a third-party loan processor, based in Redwood City, California, that processed PPP loan applications for Bank 1. A small business could apply for a PPP loan through an online portal operated by Loan Processor 1. Loan Processor 1 would receive and review the loan application. If the loan application was approved, a partner financial institution would disburse the PPP loan funds.

11. Bank 2 was a financial institution headquartered in San Francisco, California.

12. Bank 3 was a financial institution headquartered in Arlington, Massachusetts, which processed PPP loan applications for approved SBA lenders of PPP loans and which itself was an approved SBA lender of PPP loans.

**COUNTS 1-2**
**Wire Fraud**
**(18 U.S.C. § 1343)**

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth therein.

2. From on or about May 30, 2020, and continuing through on or about March 11, 2022, in Broward and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, the defendant,

**GERMINE CHARITE,**

did knowingly, and with intent to defraud, devise and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

**PURPOSE OF THE SCHEME AND ARTIFICE**

3. It was a purpose of this scheme and artifice for the defendant to unlawfully enrich herself by, among other things: (a) submitting and causing the submission of, via interstate wire transmissions, false and fraudulent applications for PPP loans made through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic; and (b) diverting the loan proceeds for her personal use, the use and benefit of others, and to further the fraud.

**THE SCHEME AND ARTIFICE**

The manner and means by which **GERMINE CHARITE** sought to accomplish the purpose of the scheme and artifice included, among others, the following:

4. **GERMINE CHARITE** submitted and caused to be submitted two PPP loan applications on behalf of DC Super Xpress Corporation, which falsely and fraudulently represented, among other things, DC Super Xpress Corporation's total number of employees, average monthly payroll, and the fact that it was in operation before February 15, 2020.

5. In furtherance of the scheme, **GERMINE CHARITE** filed and caused to be filed (a) documents naming **CHARITE** as CEO of DC Super Xpress Corporation and (b) documents that reinstated DC Super Xpress Corporation on or about May 28, 2020.

6. On or about May 29, 2020, **GERMINE CHARITE** opened and caused to be open a bank account ending in 5466 for DC Super Xpress Corporation at Bank 2.

7. **GERMINE CHARITE** submitted and caused to be submitted false and fraudulent documentation in support of the PPP loan applications, including false and fraudulent tax forms and a false and fraudulent DC Super Xpress Corporation bank statement from Bank 2 purporting to be from in or around February 2020.

8. As a result of the false and fraudulent PPP loan applications submitted as part of this scheme, Loan Processor 1 and Bank 3 approved the PPP loans for DC Super Xpress Corporation, causing Bank 1 and Bank 3 to disburse loan proceeds in the approximate amounts of $378,572 and $169,921, respectively. These loan proceeds were disbursed into the Bank 2 account ending in 5466 controlled by **GERMINE CHARITE**.

9. **GERMINE CHARITE** used the loan proceeds from the scheme for her personal use and benefit and the use of others.

**USE OF WIRES**

10. On or about the dates specified as to each count below, in Broward and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, **GERMINE CHARITE**, for the purpose of executing, and in furtherance of, the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted by means of

wire communication, in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, as more particularly described below:

| Count | Approximate Date | Description of Wire |
|---|---|---|
| 1 | June 2, 2020 | Interstate wire transfer in the amount of $378,572.00 from Loan Processor 1 to **GERMINE CHARITE**'s bank account ending in 5466 at Bank 2 in the Southern District of Florida for PPP Loan to DC Super Xpress Corporation. |
| 2 | July 1, 2021 | Interstate wire transfer in the amount of $169,921.00 from Bank 3 to **GERMINE CHARITE**'s bank account ending in 5466 at Bank 2 in the Southern District of Florida for PPP Loan to DC Super Xpress Corporation. |

In violation of Title 18, United States Code, Sections 1343 and 2.

**FORFEITURE ALLEGATIONS**

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **GERMINE CHARITE**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant shall forfeit to the United States any property constituting, or derived from, proceeds obtained, directly or indirectly, as the result of such offense, pursuant to Title 18, United States Code, Section 982(a)(2)(A).

[Space Intentionally Left Blank]

All pursuant to Title 18, United States Code, Sections 982(a)(2)(A) and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Sections 982(b)(1).

A TRUE BILL

FOREPERSON

FOR

JASON REDING QUIÑONES
UNITED STATES ATTORNEY

ALTANESE PHENELUS
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**UNITED STATES OF AMERICA** **CASE NO.** **26-20391-CR-ALTONAGA/REID**

**v.**

GERMINE CHARITE,
_______________________________/
Defendant.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _______
Number of New Defendants _______
Total Number of New Counts _______

**Court Division** (select one)
☒ Miami ☐ Key West ☐ FTP
☐ FTL ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: ______________
4. This case will take 5 days for the parties to try.
5. Please check appropriate category and type of offense listed below:

| **(Check only one)** | | **(Check only one)** |
|---|---|---|
| I | ☒ 0 to 5 days | ☐ Petty |
| II | ☐ 6 to 10 days | ☐ Minor |
| III | ☐ 11 to 20 days | ☐ Misdemeanor |
| IV | ☐ 21 to 60 days | ☒ Felony |
| V | ☐ 61 days and over | |

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge ______________ Case No. ______________
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge ______________ Magistrate Case No. ______________
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge ______________ Case No. ______________
9. Defendant(s) in federal custody as of ______________
10. Defendant(s) in state custody as of ______________
11. Rule 20 from the __________ District of ______________
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No
17. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No

By: ______________________
Altanese Phenelus
Assistant United States Attorney
FL Bar No. 112693

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:** GERMINE CHARITE

**Case No:** **26-20391-CR-ALTONAGA/REID**

Counts #: 1-2

Wire Fraud

Title 18, United States Code, Section 1343
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** The Greater of $250,000 or Twice the Gross Loss/Gain

---

***Refers only to possible term of incarceration, supervised release, and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**